38 N.J. Super. 311 (1955)
118 A.2d 880
MARIE NOTARO, PLAINTIFF,
v.
FRANK NOTARO, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 2, 1955.
*312 Mr. Harry Adler, attorney for plaintiff (Mr. David L. Horuvitz, of counsel).
Mr. William Gallner and Mr. Robert G. Howell, attorneys for defendant.
HANEMAN, J.S.C.
The plaintiff herein seeks a judgment establishing that she has an undivided one-half interest as a tenant in common with the defendant in the property described in the complaint.
The facts in connection herewith are as follows: The plaintiff was born on November 19, 1922. She and the defendant were married on April 28, 1938. Two children were thereafter born of the marriage, i.e., Mary Delores, on May 24, 1939, and Rose Shaleen, on July 1, 1948. In May of *313 1942 the home here involved was purchased, title being taken in the names of the plaintiff and defendant as tenants by the entirety. Shortly after the marriage, it became apparent that the parties were not compatibly constituted. There resulted a series of arguments and reconciliations, during which arguments there were numerous recriminations between the parties involving mutual accusations of infidelity, and charges by the plaintiff of acts of brutality allegedly committed by the defendant. The parties finally separated in 1953 and the plaintiff obtained a final judgment of divorce in September of 1955. With the general arguments and reconciliations we are not here particularly concerned. However, after what would appear to have been an especially acrimonious argument at or about the time the home here involved was purchased, the plaintiff left the defendant, taking with her the daughter, Mary Delores, and resided at the home of her aunt for some period of time. While living with her aunt, at which time plaintiff was 19 years of age, she was requested by defendant to attend at the office of Robert G. Howell, Esq., on or about September 25 or 26, 1942. She did so attend, and while there, executed the following documents: (1) an agreement providing for separation of the parties and support for the infant daughter; (2) a bill of sale to the defendant for all of the household furniture contained in premises at 123 Rutgers Avenue, Bridgeton, New Jersey; (3) a deed to the defendant for the premises known as 123 Rutgers Avenue, Bridgeton, New Jersey; (4) a deed with the name of the grantee left blank, for the premises known as 123 Rutgers Avenue, Bridgeton, New Jersey, together with an escrow agreement concerning said deed; (5) a power of attorney to defendant to execute any conveyance for or on her behalf for the premises here involved, and (6) an assignment of building and loan shares.
On October 15, 1954 the plaintiff filed the complaint in the above entitled cause, demanding that the court declare that she and the defendant had an estate by the entirety in the premises here involved. This demand was eventually amended, to the end that she sought a declaration that she *314 and the defendant had an equal undivided share in the premises as tenants in common because of the intervening judgment for divorce, above adverted to.
The defendant, by way of answer, raises the following affirmative defenses: (1) the plaintiff took no action within a reasonable time after reaching her majority to avoid the conveyance; (2) she ratified and confirmed the conveyance; (3) she is guilty of laches; (4) she is guilty of coming into court with unclean hands.
Defendant as well seeks, by way of counterclaim, to recover the amount of money withdrawn by the plaintiff from a joint bank account, and the value of an automobile allegedly converted by the plaintiff.
Generally, an infant's contract is voidable at his election. The action to avoid his deed is essentially a legal right, enforceable in a court of law by way of an action to recover the land. The length of time within which an infant may, after reaching majority, disaffirm a contract may extend for the periods prescribed in the statute of limitations, subject, of course, to an earlier loss of such right by conduct of the emancipated minor amounting to a ratification or constituting estoppel.
In Mott v. Iossa, 119 N.J. Eq. 185 (Ch. 1935), the court said:
"In determining which rule to adopt, we should bear in mind that the privilege of a former infant to avoid his deed is a legal right, enforceable in a court of law. Ross v. Adams, 28 N.J.L. 160, 161; Adams v. Ross, 30 N.J.L. 505; Peacock v. Binder, 57 N.J.L. 374. It may be said that his right is one of election; but he may sue or defend on his privilege without any prior notice or demand. Ross v. Adams, supra. His right is essentially a legal cause of action to recover the land. Such rights usually subsist until barred by the statute of limitations, and so it seems to me that the majority rule above stated is the correct one and that complainant's right to avoid his deed continues for twenty years after he attained his majority. When complainant comes into chancery, not to establish and enforce an equitable right but to aid in the enforcement of a legal right, delay will not ordinarily or in the absence of special equities bar equitable relief unless it has continued long enough to bar the legal right. Burne v. Partridge, 61 N.J. Eq. 434; Condit v. Bigalow, 64 N.J. Eq. 504, 514; Paterson *315 v. East Jersey Water Co., 74 N.J. Eq. 49, 97, affirmed 77 N.J. Eq. 588; Massie v. Asbestos Brake Co., 95 N.J. Eq. 298, 311; Id., 96 N.J. Eq. 612.
Of course, if complainant made his election and chose to ratify, he is bound and cannot now avoid his deed. No formal act is necessary to constitute ratification. Any conduct on the part of the former infant which evidences his decision that the transaction shall not be impeached is sufficient for this purpose. Delay for many years, as in the present instance, while nor enough of itself to prove ratification, may be enough when coupled with slight circumstances."
See also Commissioner of Internal Revenue v. Allen, 108 F 2d 961, (3rd Cir. 1939).
In discussing the question of laches in connection with a right of action between a husband and wife, in Hampton v. Hampton Holding Co., 17 N.J. 431 (1955), the court said:
"Delay may be attended by circumstances so gross as to preclude relief on the plainest principles of equity and good conscience, such, for example, as deliberate delay to put beyond the reach of the adverse party evidence crucial to the issue, and thus to perpetrate a fraud. But that is not the case here. It is to be borne in mind that we are here concerned with the marital relation and its security as a social unit basic to our institutions, indeed fundamental in civilized society, a policy that is not served by imposing the ordinary jural consequences of laches on delay by the parties in invoking remedial legal process as against each other during coverture, or even while separated where, as was the case here, reconciliation was not an unreasonable prospect. Ward v. McLellan, 117 N.J. Eq. 475 (E. & A. 1935); Reeves v. Weber, 111 N.J. Eq. 454 (E. & A. 1932); Alpaugh v. Wilson, 52 N.J. Eq. 424 (Ch. 1894), affirmed 52 N.J. Eq. 589 (E. & A. 1894)."
In the present matter, it cannot be said that the plaintiff delayed an unreasonably long time before she sought to avoid her contract. The time, under the statute of limitations, had not run so as to bar the plaintiff from recovery. Nor was there an unreasonably long interval between plaintiff's attainment of her majority and the announced avoidance of her contract. Her mere delay for 12 years was insufficient in and of itself to either constitute a ratification of her act or to make her guilty of laches *316 under the facts here present. I am satisfied that at least once during the intervening period of time she objected orally to her husband concerning the state of the title. She performed no affirmative act from which a ratification could be spelled out. Although there were a number of instances in which the parties separated, there were as well numerous reconciliations and resumptions of matrimonial cohabitation in the premises here involved. Until some time before the final break in 1953, it is apparent that a reconciliation was not an unreasonable prospect. The delay in instituting suit here, especially in the light of the fact that plaintiff and defendant were husband and wife, was not such as would move the court to deny relief to the plaintiff. Delay, in and of itself, without some additional facts or circumstances, is insufficient to cause a bar to a plaintiff on the grounds of laches. It must also be remembered that the defendant obtained the deed from the plaintiff, then having actual knowledge of her infancy, and that there are no intervening rights of innocent third parties involved. Cawley v. Leonard, 28 N.J. Eq. 467 (E. & A. 1877); Crandol v. Garrison, 115 N.J. Eq. 11 (Ch. 1933); Reilly v. Griffith, 141 N.J. Eq. 154 (Ch. 1947), affirmed 142 N.J. Eq. 724 (E. & A. 1948); Munger v. Munger, 21 N.J. Super. 49 (Ch. 1952), affirmed 24 N.J. Super. 574 (App. Div. 1953); Gahn v. Gahn, 30 N.J. Super. 427 (Ch. 1954).
The circumstances surrounding the withdrawal of funds from the bank by the plaintiff, which are relied upon by the defendant to charge the plaintiff with having unclean hands, are insufficient to occasion that result.
The facts do not warrant a judgment for the defendant on his counterclaim, which will be dismissed.
Judgment will be entered for the plaintiff on her complaint seeking a declaration that she is a tenant in common with the defendant in the real estate described in the complaint.